# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59527-3-II |
| Respondent, | |
| v. | |
| MICHAEL ALAN LAVALLIE, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Michael Alan Lavallie stole an all-terrain vehicle out of a garage, and a nearby surveillance camera captured him riding it away. The State charged Lavallie with second degree burglary and theft of a motor vehicle.

At trial, a police investigator testified that she reviewed the surveillance footage and photos of Lavallie, and that she came to an "investigative conclusion" that Lavallie was the person in the video. A jury convicted Lavallie of both charges.

Lavallie appeals. He argues that the investigator's statement constituted impermissible opinion testimony that he was guilty. And he raises evidentiary issues that could recur on retrial.

We conclude that Lavallie did not object to the alleged improper statement and any error was not manifest, so we do not review this issue. And we decline to address evidentiary issues that Lavallie does not contend were reversible error. We affirm.

## FACTS

Cayla and Tyler Smith discovered that their all-terrain vehicle was missing from their garage. One of the neighbors with surveillance cameras then shared footage of the thief riding the vehicle through their own yard.

Lavallie is a white man who, at the time of the crime, had short brown hair, a short beard and moustache, and extensive gray and black tattoos on his arms, hands, neck, and chest. The surveillance footage showed a man with the same skin tone, build, face shape, hair color, hairstyle, and beard and moustache style as Lavallie riding the all-terrain vehicle while wearing a short-sleeved shirt that revealed extensive tattoos. The footage was not clear enough to see the details of the tattoos, but it was readily apparent that the tattoos covered both of the thief's arms and hands and possibly extended onto his chest and neck.

Lavallie was arrested on different charges several days later. Police eventually received the Smiths' neighbors' surveillance footage. The State then charged Lavallie with second degree burglary and theft of a motor vehicle for the theft of the Smiths' all-terrain vehicle.

At trial, the Smiths and their neighbors all testified that they did not know or recognize Lavallie. The only fingerprints recovered from the garage were on a car, and they belonged to a cousin of the Smiths who had worked on that car and did not look like the man in the surveillance footage. No DNA was collected from the scene and the all-terrain vehicle was never recovered. Thus, the only evidence linking Lavallie to the crime was the surveillance footage.

Outside of the jury's presence, the trial court heard foundation for photos of Lavallie taken when he was arrested, which were redacted to make it less obvious that the photos were from a jail booking. The trial court admitted the booking photos. A police investigator testified to the jury that she reviewed the surveillance footage and photos of Lavallie:

> Q. As part of your investigation, after you reviewed that video of the male on the quad that you described and the clothing you described, did you have photographs of a Michael Lavallie that you were able to access?
> A. I did.
> Q. And did you compare those photographs of Michael Lavallie to the male depicted in the video there?

2

A. I did.
Q. Did you come to an investigative conclusion?
A. I did.
Q. And what was that?
A. That that was Michael Lavallie in the video.

Verbatim Rep. of Proc. at 219. Defense counsel did not object to this exchange. The investigator then explained that she reviewed photos of Lavallie's tattoos, and the trial court admitted those photos into evidence.

Before beginning deliberations, the jury was instructed that it was the sole judge of the credibility of the witnesses and the weight of the evidence. The jury convicted Lavallie. The trial court imposed a standard range sentence of 68 months.

Lavallie appeals.

ANALYSIS

I. OPINION TESTIMONY ON GUILT

Lavallie argues the investigator's testimony that she came to an investigative conclusion that Lavallie was the person in the surveillance video was impermissible opinion testimony on his guilt. Although he did not object below, Lavallie contends that this was a manifest error violating his constitutional right to a trial by jury. And Lavallie asserts that the error was not harmless because the surveillance footage was the only evidence connecting him to the crime.

The State responds, in part, that "Lavallie cannot show actual prejudice from the deputy's statements because the very information that the deputy used was presented to the jurors for their consideration and the trial judge instructed them that they alone decided the weight and credibility of the evidence." Br. of Resp't at 10. We agree with the State.

Because Lavallie did not object below, this court may decline to review his claim unless he shows that the testimony constituted a manifest error affecting a constitutional right. RAP 2.5(a)(3). Opinion testimony about the defendant's guilt can violate the defendant's constitutional right to a trial by jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). An error is manifest if it had practical and identifiable consequences at trial. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).

Here, even if we assume without deciding that Lavallie's claim raises a constitutional error, it must also be manifest if not raised below. RAP 2.5(a). The investigator's testimony did not provide any information to the jury that went beyond what the jury members could already see with their own eyes. It is true that identity was the sole contested issue in the case, and the surveillance footage the investigator commented on was the only evidence possibly linking Lavallie to the theft. But the jury reviewed the surveillance video and photos of Lavallie's face and tattoos. The jury was just as capable as the investigator in determining whether Lavallie was the person driving the stolen all-terrain vehicle in the surveillance footage. The jury was also instructed that it was the sole judge of the weight of the evidence and witness credibility. The jury was able to make its own comparison of the photo and video evidence, and it concluded that Lavallie stole the vehicle. Accordingly, any error was not manifest because Lavallie has not shown the challenged testimony had practical and identifiable consequences at trial. *O'Hara*, 167 Wn.2d at 99.

## II. OTHER EVIDENTIARY ISSUES

Lavallie also challenges several other evidentiary issues by stating that "[o]n remand, the other errors should not be allowed." Br. of Appellant at 20. But he does not assert that these issues

No. 59527-3-II

were reversible error. He refers to a comment by the prosecutor about the origin of the booking photos, which was not objected to; a brief statement by the investigator that Lavallie was involved in "'a lot'" at the time he was arrested, which was objected to and stricken; and a statement from a neighbor witness that "'the defendant'" appeared in the surveillance footage, which was objected to and stricken. Br. of Appellant at 22-23 (quoting record).

These statements were all either not objected to or struck if objected to, and the jury was ordered to disregard the stricken statements. And Lavallie does not argue on appeal that these alleged errors are reversible but instead asks only that this court "order that these errors shall not be repeated on retrial." Br. of Appellant at 23. Because we affirm and do not order retrial, we decline to reach these additional issues.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, P.J.

CHE, J.

5